| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

CHRISTOPHER MOSER, TRUSTEE, *and* §
KERNELL THAW, §
　　　　　　　　　　　　　　　　§
　　　　Appellants, §
　　　　　　　　　　　　　　　　§
*versus* 　　　　　　　　　　　§　　CIVIL ACTION NO. 4:14-CV-185
　　　　　　　　　　　　　　　　§
LESLIE SCHACHAR, M.D., §
　　　　　　　　　　　　　　　　§
　　　　Appellee. §

## MEMORANDUM AND ORDER

Pending before the court are Christopher Moser's ("Moser" or "the Trustee") and Kernell Thaw's ("Kernell") (collectively, "the Appellants") appeals from the judgment of the United States Bankruptcy Court, entered February 3, 2014, in which the Honorable Brenda T. Rhodes found that Leslie Schachar, M.D.'s ("Schachar") proof of claim was secured by an interest in the Thaws' house located at 5197 Brandywine Lane in Frisco, Texas ("the Brandywine property").[1] Having reviewed the bankruptcy judge's opinion and order, the record, the submissions of the parties, and the applicable law, the court is of the opinion that the bankruptcy court's decision should be affirmed.

I.　　Background

Stanley Thaw ("Stanley" or "the Debtor") and Kernell were married on June 9, 2001. The following year, Stanley and Schachar formed Theramedics, a health care business that proved to be unprofitable. In 2004 and 2006, Theramedics defaulted on various financial obligations that

---

[1] The Trustee and Kernell filed separate appeals. Because each appellant contests the same bankruptcy court decision, this court entered an order of consolidation (#12) on April 16, 2014. Accordingly, this opinion controls both appeals.

had been guaranteed by Stanley and Schachar. Schachar paid the obligations and subsequently sued to collect Stanley's share. Schachar obtained a judgment against Stanley on November 5, 2009 ("the Schachar Judgment"), and recorded an abstract of judgment in the real property records of Collin County, Texas, on November 11, 2009.

Several days before Schachar obtained the judgment, on November 1, 2009, the Thaws executed a contract for deed to purchase the Brandywine Property from Axxium Custom Homes, Dallas LLC ("Axxium"), which was not recorded in the real property records. At the time, the Thaws lived at 2532 Pelican Bay Drive, in Plano, Texas ("the Pelican Bay Property"), their designated homestead since 2004.[2] Following the execution of the contract for deed, the Thaws made monthly payments on the contract, moved some personal belongings into the Brandywine house, and commenced various remodeling projects. The Thaws moved into the Brandywine house on January 14, 2010, and completed their purchase on June 27, 2011, granting a deed of trust lien to Regions Bank.

Stanley filed for Chapter 7 bankruptcy protection on December 2, 2011, and Moser was appointed Trustee of Stanley's bankruptcy estate. At the time of Stanley's bankruptcy filing, the Thaws were living in the Brandywine house, and Stanley claimed a homestead exemption under 11 U.S.C. § 522(b). On January 19, 2012, prior to the bankruptcy court's October 30, 2012, order granting Stanley a discharge, Schachar filed a proof of claim in the bankruptcy proceeding, asserting that he had a secured claim of $400,566.17, as evidenced by the Schachar Judgment.[3]

---

[2] The Thaws recorded a Voluntary Designation of Homestead with the Collin County Clerk, dated January 9, 2004, designating the Pelican Bay Property as their homestead.

[3] Schachar amended his proof of claim on November 13, 2013.

The Trustee and Kernell objected to Schachar's proof of claim, asserting that Schachar was actually an unsecured creditor. On January 21, 2014, the bankruptcy court overruled the parties' objections, finding that Schachar had a secured interest in the net proceeds of the sale of the Brandywine Property. Accordingly, the bankruptcy court entered an order declaring Schachar a secured creditor on February 3, 2014. It is from this order that Kernell and the Trustee appeal.

II.  Analysis

   A.  Jurisdiction

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" and, with leave of the court, "other interlocutory orders and decrees" of bankruptcy judges. 28 U.S.C. § 158(a). Pursuant to 28 U.S.C. § 158(c)(2), an appeal from the bankruptcy court to the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ." *Id*. Therefore, "when reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court." *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *accord Perry v. Dearing (In re Perry)*, 345 F.3d 303, 308-09 (5th Cir. 2003); *In re S. White Transp., Inc.*, 473 B.R. 695, 698 (S.D. Miss. 2012), *aff'd*, 725 F.3d 494, 496 (5th Cir. 2013).

   B.  Standard of Review

In reviewing a decision of the bankruptcy court, Rule 8013 of the Federal Rules of Bankruptcy Procedure requires the court to accept the bankruptcy court's findings of fact unless clearly erroneous and to examine *de novo* the conclusions of law. *See In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012); *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir.

2008); *Texas v. Soileau (In re Soileau)*, 488 F.3d 302, 305 (5th Cir. 2007), *cert. denied*, 552 U.S. 1180 (2008). Mixed questions of law and fact are reviewed *de novo*. *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed. *See Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258-59 (5th Cir. 2006); *see also In re Perry*, 345 F.3d at 309 (quoting *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003)).

### C. Arguments in Support of Appeal

The Trustee appeals the bankruptcy court's order on two grounds: first, that Texas Property Code §§ 52.042 and 52.043 required that the Schachar Judgment and corresponding judgment lien be "canceled and released" and could "not be enforced," and that the bankruptcy court erred in concluding that Schachar was a secured creditor despite these statutes; and second, that the bankruptcy court failed to find that Schachar's abstract of judgment was fatally flawed because it did not include the Debtor's birth date or the last three numbers of his driver's license. Kernell joins the Trustee's arguments and asserts a third: that the bankruptcy court erred in finding as a matter of law that the Thaws could not claim the Brandywine Property as their homestead while still living at the Pelican Bay Property.

#### 1. Texas Property Code §§ 52.042 and 52.043

"[W]hen determining the substance of property rights and security interests in bankruptcy, 'the basic federal rule is that state law governs.'" *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009) (quoting *In re Price*, 562 F.3d 628, 624 (4th Cir. 2009); *Butner v. United States*, 440 U.S. 48, 57 (1979)). Under the Texas Property Code, an "abstract of judgment, when it is recorded and

4

indexed . . . constitutes a lien on and attaches to any real property of the [Debtor], other than real property exempt from seizure or forced sale, . . . that is located in the county in which the abstract is recorded and indexed." TEX. PROP. CODE § 52.001. Furthermore, the Bankruptcy Code provides that the holder of a judgment lien has a secured claim and is a secured creditor. *See* 11 U.S.C. § 506(a)(1); *In re Singletary*, 354 B.R. 455, 468 (Bankr. S.D. Tex. 2006).[4] In this case, Kernell and the Trustee object to the bankruptcy court's classification of Schachar as a secured creditor based on section 52.042 of the Texas Property Code.

Texas Property Code § 52.042 applies to "judgment[s] and judgment lien[s] for which an abstract of judgment lien is recorded on or after September 1, 1993." TEX. PROP. CODE § 52.041. The section provides:

> (a) A judgment is discharged and any abstract of judgment or judgment lien is canceled and released without further action in any court and may not be enforced if:
>> (1) the lien is against real property owned by the debtor before a petition for debtor relief was filed under federal bankruptcy law; and
>> (2) the debt or obligation evidenced by the judgment is discharged in the bankruptcy.
>
> (b) A judgment evidencing a debt or obligation discharged in bankruptcy does not have force or validity and may not be a lien on real property acquired by the debtor after the petition for debtor relief was filed.

TEX. PROP. CODE § 52.042. Section 52.043 provides exceptions to section 52.042, specifically exempting judgment liens that meet two requirements: first, that "the lien is against real property owned by the debtor before a petition for debtor relief was filed under federal bankruptcy law;"

---

[4] The Bankruptcy Code no longer defines "secured creditor." *See In re Singletary*, 354 B.R. at 468. Rather, "to be a 'secured creditor,' [the party's] claim must qualify for secured status under § 506(a)." *Id.*

and second, that "the debt or obligation evidenced by the judgment is not discharged in bankruptcy;" or "the property is not exempted in the bankruptcy and is abandoned during the bankruptcy." TEX. PROP. CODE § 52.043.

In the bankruptcy court's January 21, 2014, ruling, the court declined to "automatically strip[ ] away Dr. Schachar's judgment lien" because "a proper reading of Section 52.042 shows that there's no authority for such a result." The bankruptcy court explained:

> A discharge in bankruptcy is neither a payment nor an extinguishment of a debt. As the Court in *Hageman* explained, "When we consider the guidance from Texas law in light of the federal approach to the discharge of debt in bankruptcy, we are convinced that Section 52.042(a)(2) of the Property Code mirrors the federal approach to the proper characterization of a discharged in bankruptcy. *See Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth*, 150 S.W.3d 617, at 625 (Texas App.—Austin, 2004, no pet.) [(hereinafter, "*Hageman*")].
>
> Discharge is simply a release of a debtor's personal liability for the debt. It does not erase the debt itself. *See, e.g.*, *In re Mahoney*, 368 B.R. 579, at 584 (Bankr. W.D. Tex. 2007) ("Bankruptcy does not erase debt, the discharge is only an injunction against attempts to collect the debt as personal liability of the debtor."); *see also Deco-Dence, L.L.C. v. Robertson*, No. 05-08-01090-CV, 2001 WL 2937439 (Tex. App.—Dallas, July 22, 2011, no pet.).

*See* Transcript of Proceedings (#5). The bankruptcy court therefore concluded that Schachar's judgment lien was a secured claim that would be paid from the net proceeds of the sale of the Brandywine Property, with any "funds exist[ing] after payment of Dr. Schachar's lien" going to the Internal Revenue Service.

Kernell and the Trustee contend that the bankruptcy court's interpretation of section 52.042 holds the "Texas statute to be a nullity" and consequently renders the statute void. The Appellants argue that, because the bankruptcy court interpreted the word "discharge" as applying only to a debtor's personal liability and not to a debt, the statute's language referring to "the debt or

6

obligation evidenced by the judgment is discharged" creates a "'non-existent' legal concept." Therefore, according to the Appellants, this cannot be the proper interpretation.

The Appellants agree with the bankruptcy court that a debt cannot be discharged and that "only obligors and property may be discharged." They argue, however, that the Texas Legislature, in enacting section 52.042, was "talking about the discharge of debtors, not the discharge of debts." The Appellants cite section 524(a)(1) of the Bankruptcy Code, which states the federal position regarding the effect of a discharge:

(a) A discharge in a case under this title—

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(1). The Appellants argue that section 52.042 is consistent with section 524 and that the language specifying that "the debt or obligation evidenced by the judgment is discharged" in section 52.042 "does not justify a defacto nullification of the statute" in the same way that the language in section 524 referring to a "discharge of such debt" does not render section 524 meaningless.

Schachar, on the other hand, argues that section 52.042 cannot serve to cancel his judgment lien because the section is "contrary to the Bankruptcy Code's statutory scheme" and is therefore preempted by federal law. Schachar faults the Appellants for failing to cite a single case where the bankruptcy court stripped away a judgment lien, and further argues that section 52.042 "should have no application within the context of bankruptcy under the general rule that federal law preempts state law."

Accordingly, there is no dispute between the parties that "[a] discharge in bankruptcy is neither a payment nor an extinguishment of a debt," as the bankruptcy court found. *See In re Spillman Dev. Grp., Ltd.*, 401 B.R. 240, 254 (Bankr. W.D. Tex. 2009); *Hageman*, 150 S.W.3d at 625. Indeed, the bankruptcy court was correct in stating that "[d]ischarge is simply a release of a debtor's personal liability for the debt. It does not erase the debt itself." *See Hageman*, 150 S.W.3d at 625; *In re Mahoney*, 368 B.R. at 584; *see also* 11 U.S.C. § 524(a). Furthermore, while a debt remains after discharge, the debt is "divested of its character as a personal obligation that is legally enforceable." *Hageman*, 150 S.W.3d at 625. What remains is, in essence, solely a moral obligation. *See id.* (citing *Miller v. Aaron*, 413 S.W.2d 426, 429 (Tex. Civ. App.—Dallas 1967, writ ref'd n.r.e.) ("It is well settled that a moral obligation is a sufficient consideration for a subsequent promise of the debtor to pay in the case where the original debt is barred by limitations or the bankruptcy or insolvency laws.")); *see also Zavelo v. Reeves*, 227 U.S. 625, 630 (1913) ("It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt."). These principles hold true under both federal and Texas law. *Hageman*, 150 S.W.3d at 625 ("[Section 52.042(a)(2) of the [Texas] property code mirrors the federal approach to the proper characterization of a discharge in bankruptcy."). As a result, this court concludes that section 52.042 is not in conflict with, and therefore not preempted by, federal bankruptcy law.

Additionally, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991);

*Apostolic Church v. Am. Honda Motor Co.*, 833 S.W.2d 553, 556 (Tex. App.—Tyler 1992, writ denied); *see* 11 U.S.C. 524(a)(2). Thus, the debtor's personal liability on a debt is discharged, but a discharge does not enjoin the collection against property if a lien existed prior to the bankruptcy proceeding. *Johnson*, 501 U.S. at 84-85 (1991) (holding that a mortgage lien securing an obligation for which a debtor's personal liability has been discharged remains a "claim" under bankruptcy law). Accordingly, when the bankruptcy court granted Stanley a discharge on October 30, 2012, Stanley's personal liability for each of his non-exempted debts was extinguished, and Stanley's creditors were enjoined from any attempt "to collect, recover or offset any such debt as a personal liability of [Stanley]." 11 U.S.C. § 524(a)(2). Stanley's *in rem* liability, however, was not forgiven, nor did the discharge operate as an injunction against creditors seeking to collect *in rem* debts. Therefore, in the absence of further legislative provisions, Schachar's judgment lien on the Brandywine Property is enforceable notwithstanding Stanley's discharge.

Kernell and the Trustee argue that section 52.042 supplements section 524 and provides the exact method in which Stanley's *in rem* liability would be extinguished by "canceling and releasing" Schachar's judgment lien.[5] Indeed, Texas, like other states, allows "a judgment and judgment lien [to] be discharged and cancelled if the [judgment debtor] is discharged from his debts under federal bankruptcy law." TEX. PROP. CODE § 52.021; *see, e.g.*, N.Y. DEBT. &

---

[5] Rules of statutory interpretation require this court, "when possible, to give each word in a statute operative effect" and to render none superfluous. *United States v. Vargas-Duran*, 356 F.3d 598, 603 (5th Cir.), *cert. denied*, 541 U.S. 965 (2004); *accord United States v. Molina-Gazca*, 571 F.3d 470, 474 (5th Cir. 2009), *cert. denied*, 558 U.S. 1150 (2010). Similarly, a court is "authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008) (citing *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)). To determine whether a statute is ambiguous, the court should "look[ ] to the language of the statute itself, the larger statutory context, and the legislative history." *Bolen v. Dengel*, 340 F.3d 300, 308 (5th Cir. 2003), *cert. denied*, 541 U.S. 959 (2004) (citing *Barnhard v. Walton*, 535 U.S. 212, 217-18 (2002)).

CRED. LAW § 150; S.D. CODIFIED LAWS § 15-16-20; WIS. STAT. § 806.19(4). For an abstract of judgment that is recorded before September 1, 1993, the judgment debtor must apply "to the court in which the judgment was rendered for an order discharging and canceling the judgment and judgment lien." *Id.* § 52.022. The judgment debtor may not apply, however, until one year has passed since the bankruptcy discharge. *Id.* After the court holds a hearing, it may enter an order of discharge and cancellation, which "constitutes a release, discharge, and cancellation of the judgment and of any unsatisfied judgment lien represented by an abstract that is of record." *Id.* § 52.024. Thus, it is clear that Texas allows certain judgment debtors to be relieved of the *in rem* liability following a discharge in bankruptcy. *See Apostolic Church*, 833 S.W.2d at 556 (finding that the debtor's bankruptcy discharge did not, "without more," extinguish the judgment liens because the debtor did not apply to cancel and discharge the liens under sections 52.022-.024); *Laswell v. Houston Citizens Bank & Trust Co.*, 640 S.W.2d 701, 702 (Tex. App—Houston [14th Dist.] 1982, no writ) (finding that the debtor's motion to discharge and cancel the judgment should have been granted, and ordered that the abstract of judgment and the judgment lien be discharged and canceled).

In 1993, the Texas legislature changed this scheme, passing House Bill 1876, which added subchapter C, sections 52.041-.043, to the Texas Property Code. Tex. H.B. 1876, 73d Leg., R.S. (1993). The background of the bill explains: "Since any [judgment discharged in bankruptcy] is no longer enforceable against the discharged debtor, he is rarely told that, although he is no longer personally liable for the debt, his property remains burdened by a lien of record." House Comm. on Invs. & Banking, Bill Analysis, Tex. H.B. 1876, 73d Leg., R.S. (1993). The legislature recognized that the existing statute required "additional litigation to remove prior recorded

10

judgments as a lien on any property returned to the debtor after discharge. Therefore, the purpose of the bill was to "remove[ ] the unnecessary current requirement that a debtor go back to state court to eliminate a recorded abstract of the discharged judgment." *Id.*

Kernell and the Trustee are correct, then, that sections 52.041-.043 allow Stanley's *in rem* liability to be extinguished through an automatic discharge and cancellation of Schachar's lien, provided that the Brandywine property was either exempted or not abandoned during the bankruptcy.[6] This does not take effect, however, until *after* the bankruptcy proceeding. *See id.* ("HB 1876 would add subchapter C to the Property Code to allow automatic cancellation of judgments and judgment liens against debtors *following a bankruptcy action* when an abstract of judgment is recorded on or after September 1, 1993.") (emphasis added); *see also* TEX. PROP. CODE § 52.021-.025 ("A person may not apply for the order [discharging and cancelling a judgment lien recorded before September 1, 1993] before a year has elapsed since the bankruptcy discharge."). As a result, Schachar remained a secured creditor throughout the bankruptcy proceeding, and the bankruptcy court did not err in concluding that he was entitled to have his judgment lien paid from the net proceeds of the sale of the Brandywine Property.

### 2. Abstract of Judgment

Under Texas law, a judgment creditor must obtain and record an abstract of judgment to create and attach a judgment lien on the judgment debtor's real property. *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 771 F.3d 301, 305 (5th Cir. 2014); *In re Herman*, 315 B.R. 399, 406 (Bankr. E.D. Tex. 2004). The creation of such a judgment lien, however, is not ministerial; the

---

[6] The Appellants assert that the Brandywine Property was not abandoned during the proceeding. Schachar does not contest this assertion.

judgment creditor must substantially comply with the statutory requirements of the Texas Property Code for a valid abstract of judgment to attach to the debtor's real property. *MM Steel, L.P.*, 771 F.3d at 305-06 (citing TEX. PROP. CODE. § 52.001-.003; *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied). "Substantial compliance allows only a minor deficiency in an element of the abstract as opposed to omitting a statutorily required element altogether." *Olivares v. Nix Trust*, 126 S.W.3d 242, 248 (Tex. App.—San Antonio 2003, pet. denied). If the abstract of judgment is not in substantial compliance with the statute, no judgment lien is created. *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 39 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "The central question in each case is the adequate provision of notice to the public through the filing of an adequate abstract." *Rogers v. Peeler*, 271 S.W.3d 372, 375 (Tex. App.—Texarkana 2008, pet. denied).

Section 52.033 requires that an abstract of judgment include, among other things: "the birthdate of the defendant, if available to the clerk or justice" and "the last three numbers of the driver's license of the defendant, if available." TEX. PROP. CODE. § 52.003. Furthermore, "'[i]t is well settled in Texas that it is the judgment creditor's responsibility to ensure that the clerk abstracts the judgment properly.'" *Wilson*, 228 S.W.3d at 233 (quoting *Olivares*, 126 S.W.3d at 248).

In this case, Kernell and the Trustee argue that Schachar's abstract of judgment was fatally flawed because it did not contain the Debtor's birth date or driver's license number. The Appellants assert that this information was "available" to Schachar because "Texas Transportation Code § 730.007 . . . was enacted for the very purpose of making a debtor's birth date and drivers [sic] license number readily available to trial lawyers' attempting to collect judgments for their

12

clients." Because this information was available to Schachar, the Appellants argue, the bankruptcy court erred in finding that Schachar's judgment lien attached to the Brandywine Property. Schachar responds that he "did not know of or have any documentation within his possession, custody, or control at the time of the filing of the abstract of judgment that contained the Debtor's birth date or driver's license number," and that, therefore, the information was not "available" to him.

The parties raised these arguments before the bankruptcy court, which held the abstract of judgment was valid. The bankruptcy court found that "Dr. Schachar did not know or have within his possession information regarding Stanley Thaw's birth date, the last three numbers of the driver's license, or the last three numbers of the Social Security Number." Evaluating section 52.003's language, the court explained that the inclusion of this information was "conditional" and not mandatory:

> "The dictionary definition of the word 'if' is: 'on condition that; in case that; provided that.' The dictionary definition of the word 'available' is 'at one's reach or disposal; that can be used, had, or got.' The *Rizk* Court concluded that these items should be included in the abstract of judgment on the condition that such information was within the reach of the Clerk of Court. For example, the Clerk or the judgment creditor are not required to take the deposition of the judgment debtor to obtain a birthday date and driver's license number. . . . Furthermore, substantial compliance with Section 52.003 is sufficient. *See Olivares v. Nix Trust*, 126 S.W.3d 242, 248 (Tex. App.—San Antonio 2003, pet denied). The purpose [of the abstract of judgment statutes] are to provide a means of ascertaining the existence of judgment liens and to indicate the source from which all full information may be obtained. Those purposes are meant [sic] by the abstract of judgment in the case before this Court."

Transcript of Proceedings (#5) (citing *Fred Rizk Constr. Co v. Cousins Mortg. & Equity Invs.*, 627 S.W.2d 753, 756 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.)).

Here, the parties contest the availability of the Debtor's birth date and driver's license number. Under the statute, these details are necessary to the abstract of judgment only "if available to the clerk or justice" or "if available." Courts interpreting section 52.003 have held that the phrase "'if available to the clerk of the court'[7] has been construed to mean 'reasonably available to the clerk of the court.'" *Olivares*, 126 S.W.3d at 248; *see Fred Rizk Constr. Co.*, 627 S.W.2d at 756 (providing that such information must be "within the reach of the clerk of court"). As the bankruptcy court correctly stated, neither the clerk of the court nor the judgment creditor are required to take the deposition of the judgment debtor to obtain this information. *Olivares*, 126 S.W.3d at 248. Thus, these details are mandatory only if they are "reasonably available" to the clerk. Further, in *Rizk*, the first Texas case to interpret section 52.003, the court commented that the clerk's office in question recorded the defendant's driver's license number and birth date "when such information was contained within the records of the court." *Fred Rizk Constr. Co.*, 627 S.W.2d at 756.

The Appellants argue that section 730.007 of the Texas Transportation Code changes this result, providing lawyers with a procedure to obtain the defendant's birth date and driver's license number, thus making such information available to trial lawyers for a small fee. Kernell and the Trustee assert that section 730.007 was enacted "for [the] precise purpose of making information available to lawyers collecting judgments for their clients" and "for the very purpose of making those things readily, reasonably and inexpensively available and 'within the reach' of the clerk or

---

[7] The original provision, set forth in Vernon's Annotated Revised Civil Statutes article 5447, required the abstract of judgment to include "the birthdate and driver's license number of the defendant, if available to the clerk of the court." TEX. REV. CIV. STAT. ANN. art. 5447, *repealed by* Acts 1983, 68th Leg., R.S., ch. 576, § 6, 1984. The current version separates the two provisions, asks only for the last three numbers of the defendant's driver's license, and changes "clerk of the court" to "clerk or justice." TEX. PROP. CODE. § 52.003. (West 2007).

attorney preparing the abstract." The legislative history, however, suggests otherwise. The 75th Legislature intended this statute to "restrict the use of information made available by the Texas Department of Public Safety and the Texas Department of Transportation" in an effort to "combat growing public concerns about crime." Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 1069, 75th Leg., R.S. (1997). Further, the bill sought to "protect the interest of an individual in the individual's personal privacy by prohibiting the disclosure and use of personal information contained in motor vehicle records, except as authorized by the individual or by law," such as for "statistical research marketing purposes, vehicle safety and recall notices, insurance underwriting and the identification of owners of towed vehicles." *Id.*; Tex. S.B. 1069, 75th Leg., R.S. (1997). Thus, neither the statute itself nor the legislative history references the use of such information by judgment creditors or their lawyers.

In any event, the bankruptcy court heard testimony from Schachar in which he indicated that he did not have information regarding Stanley's birth date or driver's license number. The bankruptcy court accepted Schachar's testimony as true in finding that such information was not "available," that the absence of such information did not impede section 52.003's purposes, and that the abstract of judgment was therefore not fatally flawed. Such a finding is reviewed for clear error, which the Appellants have been unable to demonstrate. *See Bertucci Contracting Corp.*, 465 F.3d at 258 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.") (citations omitted). Accordingly, this court is not "left with the definite and firm conviction" that the bankruptcy court clearly erred by concluding that the abstract of judgment created a validly attached judgment lien on the Brandywine Property. *See id.* at 262.

15

3. <u>Homestead</u>

Finally, Kernell asserts that the bankruptcy court erred in finding "as a matter of law" that the Thaws could not claim the Brandywine Property as their homestead. If the Brandywine Property was indeed the Thaws' homestead on November 11, 2009—the date Schachar recorded his abstract of judgment—it would have been protected from the reach of Schachar's judgment lien. If the Pelican Bay Property remained the Thaws' homestead, however, the Brandywine Property would not be protected and Schachar's lien would have attached on November 11, 2009, making him a secured creditor in the ensuing bankruptcy proceeding.

In evaluating this issue, the bankruptcy court stated:

> [T]he Court concludes in this case that the Brandywine house was not protected as a homestead at the time Dr. Schachar filed his abstract of judgment. The Thaws were still living in their Pelican Bay home at that time. They had not sold the Pelican Bay home. And they continued to hold title to the Pelican Bay home, even after moving into the Brandywine house. And they continued to assert that the Pelican Bay home was their homestead. When they finally abandoned the Pelican Bay home as their homestead and moved into the Brandywine house, Dr. Schachar's judgment lien was in place and their rights to the Brandywine house are subject to it.

Transcript of Record (#5). Kernell argues that the bankruptcy court erred in refusing to consider the Thaws' "well established intent to move to Brandywine when the remodeling was completed." Furthermore, Kernell relies on a series of "recent" Texas cases with "a more nuanced view of the change of homestead issue." Kernell contends that the bankruptcy court failed to conduct a proper factual inquiry, instead asserting a legal conclusion, and "took the rigid view that only actually [sic] physical relocation would be sufficient to establish a new homestead in the Brandywine property."

16

In a bankruptcy action, the debtor has the option to take advantage of either federal exemption laws under the Bankruptcy Code or state exemptions laws. *In re Zibman*, 268 F.3d 298, 320 (5th Cir. 2001). In this case, the Debtor opted to claim his homestead exemption under Texas law. The Texas Property Code specifies that a homestead is "exempt from seizure for the claims of creditors."[8] TEX. PROP. CODE § 41.001; *see id.* § 41.002 (defining a homestead). The Code also sets forth procedures for designating property as a homestead. *See id.* § 41.005(c) (providing voluntary designation procedures); *id.* § 41.022 (providing procedures for a debtor's designation).

Generally, to establish a homestead, a person must intend the land to be his homestead and engage in overt actions to use the land as such. *In re Brundage*, No. 12-35869, 2014 WL 929709, at *5 (Bankr. S.D. Tex. Mar. 7, 2014) (citing *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Tex. App.—El Paso 1997, pet. denied)). "[A] claimant may have only one homestead at any given time," regardless of the number of residences the claimant maintains. *In re Cate*, 170 B.R. 582, 584 (Bankr. N.D. Tex. 1994). Although "mere ownership alone is insufficient to constitute premises of a homestead," "[p]ossession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact." *Sanchez*, 960 S.W.2d at 770 (citations omitted). Determining whether a property is a homestead is a "'fact-intensive inquiry that considers the owner's concurrent usage and intent to claim the property as a homestead.'" *In re Scott*, 449 B.R. 697, 702 (Bankr. W.D. Tex. 2011) (quoting *Florey v. Estate of McConnell*, 212 S.W3d 439, 445 (Tex. App.—Austin 2006, pet. denied)). Additionally, "'[o]nce acquired, homestead rights are

---

[8] The Texas Constitution further provides that "[t]he homestead of a family, or a single adult person, shall be, and is hereby protected from forced sale, for the payments of all debts except for: the purchase money thereof, or a part of such purchase money." TEX. CONST. art. XVI, § 50.

not easily lost. Property may lose its homestead character only by the claimant's death, abandonment, or alienation.'" *In re Scott*, 449 B.R. at 707 (quoting *Duran v. Henderson*, 71 S.W.3d 833, 842 (Tex. App.—Texarkana 2002, pet. denied). A homestead is deemed "abandoned" if the owner voluntarily leaves the residence "with a then present intent to occupy it no more as a home." *Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 715 (Tex. App.—Tyler 2007, pet. denied) (citation omitted).

As outlined above, the Thaws were living at the Pelican Bay house when they executed a contract for deed to purchase the Brandywine Property on November 1, 2009—ten days before Schachar recorded the abstract of judgment in the Collin County real property records. The record reflects that the Thaws made payments on the contract, moved some personal belongings into the Brandywine house, and began renovations on the property. The Thaws officially moved onto the property on January 14, 2010, and completed their purchase on June 27, 2011—several months before Stanley filed for bankruptcy.

Kernell asserts that the Thaws would have moved into the Brandywine house sooner had it not been for the property's uninhabitable conditions caused by the substantial remodeling. Indeed, Kernell maintains that the Thaws intended to move as soon as the remodeling was completed, and that this intent is sufficient to establish the Brandywine Property as Stanley's homestead. In support of her argument, Kernell cites several cases holding that a homestead determination is a fact-intensive inquiry. *See Caulley v. Caulley*, 806 S.W.2d 795 (Tex. 1991); *Kendall Builders Inc. v. Chesson*, 149 S.W.3d 796 (Tex. App.—Austin 2004, pet. denied); *Towery v. Plainview Bldg. & Loan Ass'n*, 99 S.W.2d 1039 (Tex. Civ. App.—Amarillo 1936, writ ref'd).

The bankruptcy court's ruling reflects that the bankruptcy court engaged in such a factual inquiry. The court found that the Thaws had not evinced an intention to abandon the Pelican Bay Property, as they continued to use it as their home and asserted that the Pelican Bay Property remained their homestead. The record supports the bankruptcy court's finding. The Thaws did not record the contract for deed on the Brandywine Property; they claimed a tax homestead exemption on the Pelican Bay Property in 2010; and they represented to another bank on November 12, 2010, that their present address was the Pelican Bay Property. Based on this evidence, the bankruptcy court did not clearly err in finding that the Thaws had not manifested an intention to abandon the Pelican Bay Property and adopt the Brandywine Property as their homestead as of November 11, 2009.

III. Conclusion

Consistent with the foregoing analysis, the bankruptcy court did not err in finding that Schachar has a secured interest in the net proceeds of the sale of the Brandywine Property. Accordingly, the judgment of the bankruptcy court is AFFIRMED, and the Clerk of Court is directed to close the case.

SIGNED at Beaumont, Texas, this 17th day of February, 2015.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE